# In the United States Court of Federal Claims

No. 15-1489C
(Filed: May 31, 2018)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

|  |  |
|---|---|
| | * |
| **NAFISEH MOGHADAM,** | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | * |
| | * |
| **THE UNITED STATES,** | * |
| | * |
| Defendant. | * |
| | * |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

*Lawrence A. Bohm*, Trial Attorney, Bohm Law Group, Inc., Woodland Hills, CA, for Plaintiff.

*Douglas G. Edelschick*, Trial Attorney, *Chad A. Readler*, Acting Assistant Attorney General; *Robert E. Kirschman, Jr.*, Director, *Franklin E. White*, Assistant Director, United States Department of Justice, Civil Division, Commercial Litigation Branch, Washington, D.C., for Defendant; Of Counsel, *Maureen Ney,* Attorney, Office of Regional Counsel, Department of Veterans Affairs, Los Angeles, CA.

## OPINION AND ORDER

**DAMICH**, Senior Judge

This case is an alleged breach of contract action by the United States ("Defendant") through the Department of Veterans Affairs ("VA").  Nafiseh Moghadam, ("Plaintiff") was employed by the VA as a Physician Assistant ("PA") from May 2008 through May 2010.  Upon termination in 2010, Plaintiff contacted the Equal Employment Opportunity Commission ("EEOC") and filed a complaint alleging that the VA unlawfully terminated her due to discrimination and retaliation.  The parties entered into a settlement agreement on April 1, 2013, to resolve the EEOC dispute.

On December 8, 2015, Plaintiff filed a complaint in this Court alleging that the VA breached the settlement agreement.  Plaintiff alleges that the VA failed to reinstate her in the PA position in a timely matter.  On February 29, 2015, Defendant answered alleging affirmative defenses, namely, that Plaintiff's claims should be barred in whole or in part because any nonperformance by the VA was excused based on the Plaintiff's conduct.

1

During the discovery process, on May 4, 2017, in response to the Defendant's motion to compel, the Court ordered Plaintiff to produce certain non-privileged documents in the possession of her prior counsel, Ms. Myrna Castanon, and documents pertaining to Plaintiff's income from 2014 to 2016.  On May 15, 2017, Defendant filed a motion to show cause why Plaintiff did not comply with this Order.[1]  On July 6, 2017, the Court Ordered Plaintiff, again, to produce the requested documents; the Order was complied with and the documents were produced.  Discovery then came to a close.

On January 19, 2018, the parties filed their respective motions for summary judgment.  Briefing proceeded accordingly and the matter is ripe for decision.

For the reasons discussed below, the Court **GRANTS** Defendant's motion for summary judgment and **DENIES** Plaintiff's motion for summary judgment.

## I.      Statement of Facts

### A.  EEOC Complaint

Plaintiff was employed by the VA as a PA from May 2008 to May 2010.  Moghadam Decl. ¶ 2.[2]  In May 2010, Plaintiff was terminated from her position.  Compl. ¶ 7.  Believing that she was the subject of unlawful discrimination and retaliation, she filed a complaint with the EEOC in June 2010.  *Id.*  On April 1, 2013, the parties reached a settlement agreement to resolve the EEOC complaint.  Compl. ¶ 8.  This settlement agreement is the subject of the current dispute.

### B.  The Settlement Agreement

In exchange for withdrawing her complaint against the VA, Plaintiff received *inter alia*: money and reinstatement to her old position.[3]  DA27-28.[4]  There is no question that Defendant paid Plaintiff the sum awarded in the settlement agreement; the dispute is only related to her reinstatement.

Specifically, as to Plaintiff's reinstatement, paragraph 1(b) provided that the agency would:

---

[1] The motion was based on the fact that Defendant was unable to read many of the documents in the format produced by Plaintiff's counsel and the lack of production of particular income-related documents.

[2] Moghadam Decl. is attached to Plaintiff's motion for summary judgment.

[3] Plaintiff also received permission to reapply for the benefits of the "EDRP (loan reimbursement program)," a 4/10 work schedule, removal of all negative references in her OPF file, an office, an ergonomic workstation, use of a government car when appropriate, and she would be deemed to have served probation for 2 years.  DA28.

[4] DA_ refers to Defendant's Appendix attached to its motion for summary judgment.

> Place [Plaintiff] in a job as a Physician Assistant, GS 12, after she obtains her NCCPA certification, at the Greater Los Angeles Healthcare Center, West Los Angeles.  [Plaintiff's] salary will be the salary that she would have received (including any and all salary increases) as if the VA had not removed her in May 2010.  [Plaintiff] shall have the opportunity to participate in all the VA's employees benefits program (TSP deductions, health care, vision and dental care, annual leave, sick leave) when she is reinstated.  The agency agrees that Family Medical Leave Act (FMLA) will be effective immediately.  The parties understand that [Plaintiff] must satisfy all other requirements for employment with the Agency, including security clearance and physical requirements . . . .

DA27.  The agreement also contemplated that the VA would place Plaintiff in her position "within 60 days" after Plaintiff provided proof of her NCCPA certification.  DA28.  Plaintiff had 180 days to receive the license.  DA28.

Importantly, paragraph 5 of the settlement agreement provided in relevant part, "[Plaintiff] also agrees to promptly provide any document or take further action necessary to . . . effectuate any term of this agreement."  DA29.  The settlement agreement "constitutes the entire understanding of the parties."  DA29.

### C.  Implementing the Settlement Agreement

On September 27, 2013, about five months after the execution of the settlement agreement, Plaintiff sent an email to VA's counsel, Evan Stein, informing him that she received her NCCPA certification.  DA31.  Fifty-eight days later, on November 25, 2013, the VA sent via email "pre-employment paperwork."[5]  Ex. G.[6]

Separate from completing the pre-employment paperwork, on December 18, 2013, Plaintiff picked up her credentialing package.  DA53.  Also on this date, Plaintiff submitted to a physical exam and got fingerprinted.[7]  Pl.'s Opp. at 3; DA53.  On January 29, 2014, Plaintiff sent an email to the VA explaining the steps she was taking to come back to work.  Specifically, she states that she, "completed the following: submit[ted] the completed pre[-]employment paperwork back to the HR representative, complet[ed] my physical exam as well as my finger printing.  I also picked up the credentialing packet which I was working on."  Ex. H.

---

[5] It is unclear exactly what the pre-employment paperwork attached to the email was.  However, the email did indicate that Plaintiff was to (1) supply identification, (2) attach a voided check for payroll purposes, (3) submit and pass a physical examination, (4) get fingerprinted, and (5) complete a background check.  Ex. G.

[6] Ex._ is attached to Plaintiff's opposition brief to Defendant's motion for summary judgment.

[7] Completing this credentialing form is a prerequisite to working as a PA; it is signed by a supervising physician recommending approval and agreeing to supervise and evaluate the performance of the PA.  *See* DA64.

Eventually, on July 31, 2014, Plaintiff submitted the finalized credentialing package. DA64.   Additionally, on October 14, 2014, Plaintiff submitted a final copy of the required security questionnaire. DA 65-66.  Thereafter, from October 2014 through November 2016, the VA asked Plaintiff to report to work on at least nineteen occasions. DA4.

On October 15, 2015, Ms. Mary Moore, Chief Human Resources Director of the Greater Los Angeles Healthcare System, sent an email to Plaintiff advising her that her fingerprints were about to expire on October 22, 2015.  DA49.  Plaintiff states in her affidavit that she got fingerprinted at the VA on June 22, 2015.  However, she acknowledges in an email, sent November 3, 2015, responding to Ms. Moore's October 15, 2015 notice that, "[a]lso since my fingerprints expired, when should I get re-fingerprinted?"  DA49.

On November 1, 2016, Scotte Hartronft, chief of staff of the VA Greater Los Angeles Healthcare System, sent a letter to Plaintiff that stated in part:

> In order to ensure a timely start date, you need to report to the Security Section of Human Resources to complete the finger printing and background check process.  You must make an appointment and complete the finger printing process no later than Thursday November 10, 2016 . . .
>
> Please understand that if you fail to complete the finger printing process by Thursday November 10, 2016 or fail to report for duty on December 12, 2016, the position will no longer be available and the Agency will have met its obligation under the Settlement Agreement to place you in a position.

DA67.  Plaintiff reported to work on December 12, 2016; she has been employed at the VA since.  DA100.

Plaintiff alleges that Defendant breached the agreement in two distinct ways. Plaintiff's first theory is that Defendant breached the agreement by not placing her in a PA position within sixty days of her notice to the VA of her license renewal.  Pl.'s Opp. at 6.  Plaintiff's second theory is that Defendant failed to retroactively apply her benefits to the May 2010 date, as opposed to December 12, 2016, the date she first reported to work after the 2013 settlement agreement.

## II.      Standard of Review

### A.  Summary Judgment

The Rules of the Court of Federal Claims ("RCFC") provide that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 247-48 (1986). A dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248. A fact is only "material" if it might "affect the outcome of the suit under the governing law." *Id.* "Contract interpretation is a question of law generally amenable to summary judgment," for questions of law do not turn on factual disputes. *Varilease Tech. Group, Inc. v. United States*, 289 F.3d 795, 798 (Fed. Cir. 2002). There are no genuine disputes of material fact and, therefore, this matter is ripe for review.

### B.  Federal Law Governs the Settlement Agreement

Preliminarily, Plaintiff contests that California law governs the settlement agreement. In her opposition brief to Defendant's motion for summary judgement, she contends that California law applies because under Section 1646 of the California Code, "[a] contract is to be interpreted according to the law and usage of the place where it is to be performed; or, if it does not indicate a place of performance, according to the law and usage of the place where it is made." And because the settlement agreement was performed and executed in California, Plaintiff claims that California law rules. However, Plaintiff is wrong.

Although the Tucker Act, 28 U.S.C. § 1491(a)(1), does not prescribe the law to be applied in suits brought under it, the United States Supreme Court in *Boyle v. United Technologies Corp.*, 487 U.S. 500, 504 (1988), held that "obligations to and rights of the United States under its contracts are governed exclusively by federal law." *See also Higbie v. United States*, 778 F.3d 990, 995 (Fed. Cir. 2015) ("It is well-settled that state law generally does not govern disputes involving contracts to which the Government is a party."). "This rule is premised on the need to protect the 'uniquely federal interest' underlying the statutory and regulatory framework for Federal procurements, in which 'the desirability of a uniform rule is plain.'" *Sam Gray Enters. v. United States*, 43 Fed. Cl. 596, 600 (1999) (quoting *Clearfield Trust Co. v. United States*, 318 U.S. 363, 367 (1943)). Thus, Federal Law applies in this case—not California law.[8]

### III.    Breach of Contract Claims

The Court is not persuaded that the VA breached the settlement agreement by not employing Plaintiff within 60 days and by not providing retroactive benefits. The Plaintiff's actions belie the urgency of employment within 60 days and contributed to the delay, and the plain language of the contract does not support Plaintiff's retroactive benefits claim.

---

[8] As a side note, California state courts, while they may potentially be persuasive in a case in the United States Court of Federal Claims, are not binding upon it. This Court is bound by the decisions of the United States Supreme Court and the United States Court of Appeals for the Federal Circuit, and its predecessor court, the Court of Claims. *Coltec Indus., Inc. v. United States*, 454 F.3d 1340, 1353 (Fed. Cir. 2006). In other words, this Court is not bound by California decisions or civil code, as Plaintiff asserts, but rather by Federal law. *Boyle*, 487 U.S. at 504.

A. *Plaintiff's Delay In Satisfying The Conditions Of The Contract Excuse Defendant's Non-Performance.*

"To recover for breach of contract, a party must allege and establish: (1) a valid contract between the parties, (2) an obligation or duty arising out of the contract, (3) a breach of that duty, and (4) damages caused by the breach." *San Carlos Irrigation & Drainage Dist. V. United States*, 877 F.2d 957, 959 (Fed. Cir. 1989). The settlement agreement constitutes a binding contract actionable in this Court. However, Defendant did not breach the terms of the agreement, but rather, complied with them. Here, any alleged non-performance by Defendant is excused because Plaintiff failed to satisfy the conditions of the settlement agreement.

While Plaintiff's main contention—that Defendant did not place her in a PA position within sixty days of her notice of being licensed—is true, this does not automatically mean that Defendant breached the contract. As explained in more detail below, Defendant was not obligated to place Plaintiff in a position until she submitted all of her paperwork and satisfied the conditions of the settlement agreement.

The plain language of the settlement agreement imposed certain conditions upon Plaintiff:

> The parties understand that [Plaintiff] *must satisfy all other requirements for employment* with the Agency, *including security clearance and physical requirements . . . .*

DA27 (emphasis added). Thus, she was obligated to fulfill these conditions—a security clearance and physical requirements—before the VA had a duty to offer the PA position to her. Although she sent notice to the VA on September 27, 2013, there is no dispute that she did not complete the pre-requisite paperwork to be employed as a PA until October 14, 2014. Therefore, Defendant did not breach the settlement agreement by not placing her in a position within sixty days because Plaintiff failed to satisfy the conditions before that time expired.

Plaintiff argues in her opposition brief, that Defendant was the actual cause of the delay and should be precluded from relying on Plaintiff's failure to satisfy the conditions that it itself caused.[9] *Haddon Hous. Assocs. v. United States*, 711 F.3d 1330, 1338 (Fed. Cir. 2013). Plaintiff points to the numerous occasions she emailed the VA representatives from October 2013 to November 2013 asking "what need[ed] to be done next." Ex. C. She claims that Defendant did not provide her with the pre-employment paperwork until November 25, 2013, two days before the sixty day clock ran. Ex. G.

_____

[9] Additionally, Plaintiff references two administrative rulings by the EEOC supporting her allegation that the VA was in breach of the agreement. However, these agency decisions are not binding upon this Court. *See Buckley v. United States*, 57 Fed. Cl. 328, 343-44 (2003) (holding that agency decisions lacking certain characteristics utilized in court proceedings will not be given preclusive effect).

Plaintiff contends that she "made every effort to comply with the agreement and to obtain the documents and clearance needed to be reinstated within 60 days of [the] NCCPA certification." Pl.'s Opp. at 7.

However, this argument is not persuasive. Pursuant to paragraph 5 of the settlement agreement, Plaintiff agreed "*to promptly provide any document or take further action necessary to . . . effectuate any term of this agreement.*" DA29 (emphasis added). As it played out here, Plaintiff was not prompt in providing to the VA the necessary paperwork. She did not submit the credentialing package until July 2014 and the security questionnaire until October 2014.

The Court agrees with the Plaintiff in one particular argument, namely, that it was unreasonable for the VA to send the pre-employment paperwork two days before the clock ran. But this inefficiency is overshadowed by the fact that Plaintiff delayed her performance in satisfying all of the employment conditions until a year thereafter. As discussed above, there is no dispute that Plaintiff waited until October 2014 to submit and complete all of her pre-employment paperwork.

Plaintiff also needed to complete the fingerprinting process before her employ; there is no doubt that she initially completed this task in December 2013, however, her delay in completing the required paperwork (described above) and failing to report to work for two years (described below) caused the fingerprints to expire. Pursuant to the settlement agreement, it was always her responsibility to ensure that she received the required security clearance.

She satisfied the fingerprint condition in October 2014. It was then her decision to report to work after the VA asked to bring her back. She did not do so. This failure to report caused the fingerprints to expire. Thus, the condition reverts back to not having been met. Plaintiff then delayed to November 2016 to again satisfy this condition. This delay is not the VA's fault. Under this settlement agreement, the responsibility to complete the fingerprinting process was hers alone and she failed to meet this obligation until November 2016.

It was incumbent on her to complete the conditions in the settlement agreement before the VA had any duty to place her in a position. In other words, she needed to show some initiative to satisfy the conditions. She failed to do so; therefore, the VA did not breach the settlement agreement. It took Plaintiff almost a year to submit the requisite employment paperwork and then two years to satisfy the fingerprinting condition after her first fingerprints expired. The VA had no duty to perform until all of the conditions in the settlement agreement were satisfied by Plaintiff.

Moreover, Defendant performed its end of the bargain. As explained above, Defendant was only obligated to offer the position upon satisfaction of all the conditions; the conditions were satisfied in October 2014 and this triggered Defendant's duty to offer the position. Defendant attempted to bring Plaintiff back to work by offering the PA position nineteen separate times from October 2014 to November 2016. Plaintiff

declined.  Therefore, Plaintiff's failure to physically report to work when asked excuses Defendant's nonperformance.

Additionally, and contrary to Plaintiff's assertions, Defendant was not obligated to pay Plaintiff's salary until she actually reported for work, not before it.  Upon physically showing up to the VA on December 12, 2016, she was placed in the PA position and dutifully paid thereafter.  The settlement agreement did not award Plaintiff her salary for the intervening period between sending the license notice to the VA and placing her in a position.  Plaintiff was only due her salary upon showing up to work; the ball was in her court as to her start date, and she delayed full performance—for approximately three years after all the conditions were satisfied—until December 12, 2016.  The delay and non-performance to satisfy the conditions of the settlement agreement by Plaintiff cannot be understated.  Therefore, Plaintiff's theory that Defendant untimely placed her in a position fails as a matter of law.

### B.  The Plain Language of the Contract Does Not Support Plaintiff's Retroactive Benefits Theory

Plaintiff's second theory, that the VA was to retroactively apply her benefits from May 2010 instead of December 12, 2016, also fails as a matter of law.

Plaintiff argues that under the plain language of the settlement agreement, she was to be *reinstated* as an employee and not brought back as a *new hire*.  Pl.'s Opp. at 9.  Specifically, Plaintiff claims that the settlement agreement required the VA to provide all benefits as if she had never been terminated in May 2010.  Pl.'s Opp, at 9.  In other words, Plaintiff believes that she should have a retroactive service computation date of May 2008 for benefits purposes.

Paragraph 1(b) of the settlement agreement states, in relevant part, that the Agency agrees:

> To place [Plaintiff] in a job as a as a Physician Assistant, GS 12, after she obtains her NCCPA certification, at the Greater Los Angeles Healthcare Center, West Los Angeles.  [Plaintiff's] *salary will be the salary that she would have received* (including any and all salary increases) *as if the VA had not removed her in May 2010.*  [Plaintiff] *shall have the opportunity to participate in all the VA's employees benefits program* (TSP deductions, health care, vision and dental care, annual leave, sick leave) *when she is reinstated.*

DA27 (emphasis added).

The settlement agreement uses significantly different language regarding Plaintiff's salary versus benefits.  While the plain language specifically provides that Plaintiff's salary will be computed as if she was never removed in May 2010, it does not do so with regard to her benefits.  Rather, the settlement agreement provides that upon

reinstatement, Plaintiff "*shall have the opportunity to participate*" in the benefits. Therefore, upon returning to work, she was only entitled the *opportunity* to participate in the benefits programs, and not as Plaintiff suggests, full benefits reverting back to May 2010.

The plain language of the settlement agreement provided that she would be placed "in a job as a Physician Assistant, GS 12" not her old job. Therefore, the VA was only obligated to retroactively apply Plaintiff's salary and provide her an opportunity to enroll in benefits. As such, the settlement agreement is unambiguous and does not provide Plaintiff with the relief she seeks. Because the Court finds the settlement agreement to be unambiguous, it need not resort to extrinsic evidence.[10]

### III.    Conclusion

For all the reasons stated above, the Court **GRANTS** Defendant's motion for summary judgment and **DENIES** Plaintiff's motion for summary judgment. The Clerk is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

s/ Edward J. Damich
EDWARD J. DAMICH
Senior Judge

---

[10] Even if the Court were to resort to extrinsic evidence, Plaintiff would still not be successful. During the settlement negotiations, Plaintiff requested language providing that she "also receive all benefits as if she had not been terminated in May 2010." DA22. However, this language was specifically rejected by the VA and does not appear in the final settlement agreement. Not only did the VA never agree to retroactive benefits, but it specifically rejected that proposal.